FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2020 MAR -5 PM 1:56

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

ELVIS HAROLD REYES

CASE NO. 8:20-cr-111-T-33AAS
18 U.S.C. §§ 1341 and 1349
18 U.S.C. § 1546(a)
18 U.S.C. § 1028A(a)(1)

**INDICTMENT**

SEALED

The Grand Jury charges:

**COUNTS ONE THROUGH EIGHT**
(Mail Fraud)

A. **Introduction**

At times material to this Indictment:

1. ELVIS HAROLD REYES ("REYES"), was a resident of the Middle District of Florida who owned and operated EHR Ministries, Inc. ("EHR Ministries"). REYES represented himself as a licensed and qualified immigration attorney when in truth and in fact, he was not licensed to practice law in the State of Florida or elsewhere.

2. EHR Ministries was a corporate entity incorporated, owned, operated, and controlled by REYES that, among other things, purported to assist individuals and their families with immigration-related legal work, including filing official U.S. government forms and paperwork to obtain immigration benefits in the United States. In truth and in fact, REYES used EHR Ministries to falsely represent to his

client-victims that he was a licensed attorney and qualified to represent them.

3. Under Florida law, a person who was not a citizen of the United States (hereinafter referred to as an "alien") who wanted to obtain a Florida driver's license was required to provide documentation that he or she was a legal immigrant or had a non-immigrant classification provided by the United States Department of Homeland Security.

4. The Florida Division of Motorist's Services ("FDMS"), an agency of the Florida Department of Highway Safety and Motor Vehicles, managed the driver's license offices throughout Florida, and was responsible for ensuring that aliens provided proof of identity and documentation of immigrant status or non-immigrant classification before being issued a Florida driver's license.

5. Any person applying for a Florida driver's license was required, under Florida law, to provide proof of identity. Under Section 322.08(2)(c) of the Florida Statutes, certain documents showing proof of non-immigrant classification constituted sufficient proof of identity. Specifically, "an official document confirming the filing of a petition for asylum or refugee status or any other relief issued by the United States Bureau of Citizenship and Immigration Services," was one type of proof of non-immigrant classification.

6. The United States Citizenship and Immigration Services ("USCIS"), formerly known as the United States Bureau of Citizenship and Immigration

Services, was an agency of the United States Department of Homeland Security responsible for receiving and adjudicating immigrant and non-immigrant applications and petitions, including, but not limited to, Form I-589, <u>Application for Asylum and Withholding of Removal</u> ("Form I-589").

7. USCIS's Form I-797, <u>Notice of Action</u> ("Form I-797"), was a multi-purpose form used by USCIS to provide notification of the status of an immigration petition or application. For example, a Form I-797 notified an alien that their application for legal status had been approved. Notwithstanding the title of the form as a "<u>Notice of Action</u>," a Form I-797 was used to merely provide notification that an application had been received and was pending decision by USCIS.

8. USCIS used several different versions of Form I-797. In particular, USCIS used Form I-797C to provide notification that it had received an application or petition including, among others, Form I-589.

9. To receive a Form I-797C, <u>Notice of Action</u> ("Form I-797C"), an applicant merely had to fill out and sign the particular application or petition, pay any applicable fee, and file the application or petition with USCIS. Form I-797C did not confer any immigration benefit on an applicant, rather, it was a record of what had occurred between the applicant/petitioner and USCIS.

10. Although a Form I-797C might provide notification of nothing more than USCIS's receipt of an alien's application, the FDMS typically considered

Form I-797C as acceptable documentation under the provisions of section 322.08(2) for issuance of a Florida driver's license. Consequently, FDMS commonly issued a Florida driver's license to aliens based upon their presentment of a Form I-797C to FDMS. Florida driver's licenses issued to aliens in this manner were valid for one year.

11. Any alien present in the United States who sought to obtain asylum status could file a Form I-589 with USCIS. To be eligible for asylum status, an alien had to establish that he was unable or unwilling to return to his country of nationality or residence because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. If USCIS granted an alien asylum status, the alien was allowed to remain in the United States, accept employment, and eventually adjust their status to that of a lawful permanent resident.

12. Any alien present in the United States who sought to avail themselves of Convention Against Torture protections ("CAT protections") stemming from the United States' obligations under Article 3 of the United Nations Convention Against Torture, could also file a Form I-589 with USCIS. In some ways, CAT protections differed from asylum status. CAT Protections:

    a. Required applicants to establish that it is more likely than not that they would be tortured if removed to a specific country;

  b. Did not apply to all types of harm that qualify as persecution;

  c. Did not require applicants to establish that the torture is based on one of the five protected grounds (race, religion, nationality, membership in a particular social group, or political opinion), as is required for asylum or withholding of removal under the Immigration and Nationality Act; and

  d. Could be granted to criminals, terrorists, and persecutors, as they could not be returned to a country where they would face torture.

  13. CAT protections allowed the detention of CAT recipients (when appropriate), provided for the removal of CAT recipients to a third country where they would not be tortured, allowed eligible CAT recipients (but not their family members) to apply with USCIS for work authorization, did not provide for CAT recipients to become lawful permanent residents, and did not provide for CAT recipients to bring family members to the United States.

  14. An applicant filing the Form I-589 had to sign the application under penalty of perjury under the laws of the United States. Anyone who assisted the applicant in preparing the application was also required to sign the application and declare that the information contained within the application was true based upon the preparer's personal knowledge or information provided to the preparer by the applicant. In addition, a preparer had to certify that he or she had read the completed application to the applicant in the applicant's native language or a

language the applicant could understand for verification before the alien signed the application in the preparer's presence.

15. Form I-589 was one of the few forms accepted by USCIS that did not require a filing fee. Additionally, USCIS did not require significant documentary evidence upon initial filing of the Form I-589. Consequently, filing a Form I-589 was one of the simplest and least expensive ways to obtain a Form I-797C from USCIS.

### B. The Scheme

16. Beginning on an unknown date, but at least as early as in or around October 2016, and continuing through and including the date of this Indictment, in the Middle District of Florida and elsewhere, the defendant,

ELVIS HAROLD REYES,

did knowingly and willfully devise, and attempt to devise, a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme

17. It was part of the scheme and artifice to defraud that REYES would and did incorporate and operate EHR Ministries in the State of Florida.

18. It was further part of the scheme and artifice to defraud that REYES would and did knowingly portray himself as an attorney, pastor, accountant, immigration expert and former USCIS official, and former employee and agent with

the Federal Bureau of Investigation and Department of Homeland Security.

19. It was further part of the scheme and artifice to defraud that REYES would and did knowingly advertise immigration-related services to aliens in the United States, family members and friends of aliens who were in the United States, and domestic family members and friends of aliens who were abroad, all of whom were in need of assistance for immigration-related matters before USCIS and other agencies.

20. It was further a part of the scheme and artifice to defraud that REYES would and did knowingly target Spanish-speaking immigrants from Central and South America, fraudulently representing himself as a bona fide attorney licensed to practice law in the United States.

21. It was further part of the scheme and artifice to defraud that REYES would and did knowingly advertise his services and expertise in a number of ways, including through the use of business cards, social media, and websites.

22. It was further part of the scheme and artifice to defraud that REYES would and did knowingly give false, inaccurate, and incomplete legal and immigration advice to client-victims in order to induce them to retain his services and those of EHR Ministries.

23. It was further part of the scheme and artifice to defraud that REYES would and did knowingly claim to assist client-victims with obtaining Florida

driver's licenses and temporary work authorizations by preparing and filing various immigration applications and petitions with USCIS on their behalf, many of which contained fraudulent and materially false statements.

24. It was further part of the scheme and artifice to defraud that REYES would and did knowingly prepare and file on behalf of client-victims Form I-589s, which REYES knew contained false statements, including: false biographical information, false residential addresses, fabricated preparer names, and false narratives in response to questions in Part B of the Form I-589s. The false statements in Part B of the Form I-589s included:

    a. Fabricated representations about threats, persecution, and fear of returning to the applicants' native countries due to drug-cartel related crime, political corruption, gang-related violence, other organized crime, and government-sponsored torture;

    b. Fabricated personal stories about being victimized by human trafficking, kidnapping, robberies, murder, torture, and police corruption; and

    c. Fabricated responses to Part C, Question 5, explaining why the application was being filed more than one year after the alien last arrived in the United States.

25. It was further part of the scheme and artifice to defraud that REYES knowingly would not and did not inform the client-victims that he was making

materially false representations on their behalf in the Form I-589s.

26. It was further part of the scheme and artifice to defraud that REYES knowingly would not and did not inform the client-victims that he was filing for asylum and CAT protection or, alternatively, knowingly would not and did not fully explain what asylum and CAT protection were to the client-victims.

27. It was further part of the scheme and artifice to defraud that REYES knowingly would not and did not inform the client-victims of the potential legal, administrative, and other immigration-related consequences that might follow from filing a Form I-589 application.

28. It was further part of the scheme and artifice to defraud that REYES would and did knowingly ratify Form I-589 applications, by either having client-victims sign incomplete Form I-589s or by having client-victims sign blank pieces of paper for the purpose of REYES himself adding the client-victims' signature on the Form I-589s at a later time.

29. It was further part of the scheme and artifice to defraud that REYES would and did knowingly conceal from USCIS the person who prepared the Form I-589s.

30. It was further part of the scheme and artifice to defraud that REYES would and did knowingly charge client-victims a monetary fee for preparing and filing a Form I-589 for the purpose of obtaining a Form I-797C from USCIS, and

also for the purpose of filing a Form I-765, <u>Application for Employment Authorization</u>, with USCIS.

31. It was further part of the scheme and artifice to defraud that REYES would and did knowingly issue receipts to client-victims and collect unpaid balances on monetary fees owed to him.

32. It was further part of the scheme and artifice to defraud that REYES would and did knowingly mail, and cause the United States Postal Service and private and commercial carriers to deliver to USCIS, immigration applications and petitions containing materially false statements and false information.

33. It was further part of the scheme and artifice to defraud that REYES would and did knowingly cause USCIS to mail and cause the United States Postal Service and private and commercial carriers to deliver to REYES and the client-victims Form I-797Cs.

34. It was further part of the scheme and artifice to defraud that REYES would and did knowingly provide the Form I-797Cs to client-victims for presentment to FDMS, in order to obtain Florida driver's licenses.

35. It was further part of the scheme and artifice to defraud that REYES would and did knowingly list mailing addresses on the Form I-589 applications as addresses associated with EHR Ministries or addresses otherwise under REYES's control, such as 123 West Bloomingdale Ave Suite # 301, Brandon, Florida, so that

REYES could receive any and all correspondence from USCIS.

36. It was further a part of the scheme and artifice to defraud that REYES would and did knowingly deposit and cause to be deposited client-victims' funds into bank accounts under REYES's control.

37. It was further a part of the scheme and artifice to defraud that REYES would and did knowingly possess, misuse, and transfer to USCIS identification documents containing personally-identifiable information of client-victims and their family members.

38. It was further a part of the scheme and artifice to defraud that REYES would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of, and the acts done in furtherance of, said scheme.

### D. The Execution of the Scheme

39. On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

ELVIS HAROLD REYES,

for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, caused to be mailed by United States mail ("USPS") or any private or commercial interstate carrier, according to the direction thereon, the following:

| COUNT | DATE | VICTIMS | MAILING |
|---|---|---|---|
| ONE | 12/30/2017 | E.F.R. and A.C.L. | A USPS parcel, "From: [E.F.R.]…c/o EHR Ministries, Inc.," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant E.F.R. |
| TWO | 1/8/2018 | J.R.R. and G.A.G. | A USPS parcel, "From: [J.R.R.]…c/o EHR Ministries, Inc.," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant J.R.R. |
| THREE | 2/1/2018 | S.H.G. | A USPS parcel, "From: [S.H.G.]…c/o EHR Ministries, Inc.," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant S.H.G. |
| FOUR | 2/1/2018 | C.G.A. | A USPS parcel, "From: [C.G.A.]…c/o EHR Ministries, Inc.," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant C.G.A. |
| FIVE | 2/5/2018 | J.M.B. and M.Z.C. | A USPS parcel, "From [J.M.B.]…c/o EHR Ministries, Inc.," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant J.M.B. |
| SIX | 5/25/2018 | Y.H.G. | A USPS parcel, "From [Y.H.G.]…c/o EHR," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant Y.H.G. |
| SEVEN | 6/2/2018 | D.H.C. | A USPS parcel, "From [D.H.C.]…c/o EHR," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 for applicant D.H.C. |
| EIGHT | 1/18/2019 | M.A.A. and N.L | A USPS parcel, "From: [M.A.A.]…[c/o] EHR," mailed from Brandon, Florida, to USCIS in Mesquite, Texas, containing a completed and signed Form I-589 petition for applicant M.A.A. |

All in violation of 18 U.S.C. §§ 1341, 1349, and 2.

## COUNTS NINE THROUGH SIXTEEN
(False Statements in Form I-589 Applications to USCIS)

1. The Grand Jury hereby realleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 15 and paragraphs 17 through 39 of Counts One through Eight of this Indictment.

2. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant

ELVIS HAROLD REYES,

did knowingly make and subscribe as true, under penalty of perjury pursuant to 28 U.S.C. § 1746, the following statements with respect to material facts in an application and other documents required by immigration laws and regulations, specifically, in a Form I-589, <u>Application for Asylum and Withholding of Removal</u>, to USCIS, which statements the defendant then and there knew were false, and were made in each of the following such applications:

| COUNT | DATE & APPLCIATION | APPLICANT | FALSE STATEMENTS |
|---|---|---|---|
| NINE | 12/30/2017 | E.F.R. and A.C.L. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |
| TEN | 1/8/2018 | J.R.R. and G.A.G. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |

13

| ELEVEN | 2/1/2018 | S.H.G. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |
| --- | --- | --- | --- |
| TWELVE | 2/1/2018 | C.G.A. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |
| THIRTEEN | 2/5/2018 | J.M.B. and M.Z.C. | a. Persecution and threats suffered by the applicant in his/her native country |
| FOURTEEN | 5/25/2018 | Y.H.G. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |
| FIFTEEN | 6/2/2018 | D.H.C. | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |
| SIXTEEN | 1/18/2019 | M.A.A. and N.L | a. Persecution and threats suffered by the applicant in his/her native country;<br>b. Address of the applicant's residence |

In violation of 18 U.S.C. §§ 1546(a) and 2.

## COUNTS SEVENTEEN THROUGH TWENTY-FIVE
### (Aggravated Identity Theft)

1. Paragraphs 1 through 15 and paragraphs 17 through 39 of Counts One through Eight of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.   On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

ELVIS HAROLD REYES,

did knowingly transfer, possess, and use without lawful authority, and aided and abetted others in the transfer, possession and use of without lawfully authority, a means of identification of the victims listed below, during and in relation to the felony offenses of mail fraud, in violation of 18 U.S.C. § 1341, as charged elsewhere in this Indictment, and fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546(a), as charged elsewhere in this Indictment, knowing that the means of identification belonged to an actual person:

| COUNT | DATE | VICTIM | OFFENSES | MEANS OF IDENTIFICATION |
|---|---|---|---|---|
| SEVENTEEN | 2/5/2018 | A.M.Z. | Mail Fraud, False Statements in Form I-589 | name and date of birth |
| EIGHTEEN | 2/5/2018 | S.M.Z. | Mail Fraud, False Statements in Form I-589 | name and date of birth |
| NINETEEN | 2/5/2018 | C.M.Z. | Mail Fraud, False Statements in Form I-589 | name and date of birth |
| TWENTY | 2/5/2018 | J.M.B. | Mail Fraud, False Statements in Form I-589 | name, date of birth, Mexican passport number, and Mexican unique population registry code |
| TWENTY-ONE | 2/5/2018 | M.Z.C. | Mail Fraud, False Statements in Form I-589 | name, date of birth, Mexican passport number, and |

| | | | | |
|---|---|---|---|---|
| | | | | Mexican unique population registry code |
| TWENTY-TWO | 5/25/2018 | Y.H.G. | Mail Fraud, False Statements in Form I-589 | name, date of birth, Mexican passport number, and Mexican unique population registry code |
| TWENTY-THREE | 5/25/2018 | I.N.H. | Mail Fraud, False Statements in Form I-589 | name and social-security number |
| TWENTY-FOUR | 6/2/2018 | P.H.F. | Mail Fraud, False Statements in Form I-589 | name and date of birth |
| TWENTY-FIVE | 6/2/2018 | M.H. | Mail Fraud, False Statements in Form I-589 | name, social-security number, birth date, and alien number |

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## FORFEITURES

1. The allegations contained in Counts One through Sixteen are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(6), and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1341, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. Upon conviction of a violation of 18 U.S.C. § 1546(a), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6):

  a. Any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense;

  b. Any property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and

  c. Any property that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

4. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $188,652.00, which represents a portion of the proceeds obtained from the offenses.

5. If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
FRANCIS D. MURRAY
Assistant United States Attorney

By: _____
CARLTON C. GAMMONS
Assistant United States Attorney
Acting Chief, Special Victims Section

18

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

ELVIS HAROLD REYES

## INDICTMENT

Violations:  Title 18, United States Code, Sections 1341 and 1349
Title 18, United States Code, Section 1546(a)
Title 18, United States Code, Section 1028A(a)(1)

A true bill,

_____
Foreperson

Filed in open court this 5th day
of March, 2020.

_____
Clerk

Bail $_____

GPO 863 525